GREEN, Judge.
Edwin D. Jemmott appeals his conviction for aggravated battery and his sentence of 117 months of imprisonment. Jemmott also challenges the revocation of probation in a separate case, based on this new law violation. Although we find the trial court’s denial regarding Jemmott’s jury instruction request on justifiable use of nondeadly force to be in error, as to the lesser included battery charge, we find such error harmless and affirm.
The evidence at trial included testimony of the alleged victim, Eric Grant (Eric); his cousin, Pamela Grant (Pamela); and the appellant (Jemmott). Eric testified that late one evening he and Pamela were walking along the street and had stopped so that he could finish drinking a beer. At this point, they encountered Jemmott, with whom Pamela had a previous relationship. Both Pamela and Eric told Jemmott to leave Pamela alone. Jemmott left and went to his house.
Eric and Pamela continued walking and saw Jemmott sitting on the outside stairs to his apartment. As Jemmott started down the stairs, Pamela warned Eric that Jemmott had a knife in his hand. Eric saw the knife and started backing away from Jemmott. As Eric backed away, Jemmott started coming after him. Eric testified that he told Jemmott to put the knife away and fight like a man but Jem-mott responded, “no, I’m going to kill you,” and proceeded toward him.
Eric testified that at the time of the incident he had his arm in a sling due to a cut that required stitches. As Jemmott approached, Eric could not get away. He reached for some dirt to throw in Jem-mott’s eyes, and at that point, Jemmott cut him behind the ear, Eric succeeded in pulling Jemmott down thinking he could get the knife away from Jemmott, but Jemmott cut Eric in the abdomen with the knife. According to Eric, the struggle lasted only a couple of minutes. Although Jemmott would later testify that Eric was the aggressor in this altercation when he broke a beer bottle in Jemmott’s direction, Eric denied that he was armed and stated that neither he nor Pamela broke a bottle or attacked Jemmott in any way.
After the struggle ended, Eric and Pamela walked away and called for an ambulance. Eric sustained a cut behind the ear, as well as a stab wound to the abdomen that injured his intestines. He had surgery to repair the internal injuries. He spent two months in the hospital and had home nursing care for an additional two months.
*474 Pamela’s testimony was substantially similar to Eric’s testimony. She stated that she had a relationship with Jemmott for over a year. She was upset with him and did not want to talk to him. She also testified that Eric was drinking beer from a can, not a bottle, when they first encountered Jemmott.
Jemmott testified that he was walking home from work about 11:45 in the evening when he saw two people sitting on a wall. Jemmott crossed to the other side of the street, and when he got closer, the woman called him and he saw that it was Pamela, to whom he was engaged. There were some words between the three persons, and then, Jemmott walked to his home.
Jemmott went into his apartment, changed clothes, and then answered a knock on the door by Pamela. He stepped out to the top of the stairs, and he and Pamela talked for a few minutes. Eric proceeded to come up the stairs. Jemmott testified as follows concerning the encounter:
Ms. Grant had this quart bottle of beer in her hand[,] and she proceeded to break it against the iron railings of the stairs. And in doing this, all the broken glass fell on the floor[,] and she stepped her right foot, I believe, in the broken glass and cut her right foot. And I said to her, “Now, look, see what you’ve done,” and I kind of laughedf.]
... Mr. Grant also proceeded to then break his beer bottle, and I believe I pushed at him or something like that, and he went tumbling down the stairs. And Ms. Grant tried to hold onto my hand and say [sic] that you’re going to come down the stairs with us, and I believe all three of us might have tumbled down the stairs together.
According to Jemmott, Eric and he were struggling from fifteen to thirty minutes at the bottom of the stairs, running around behind each other, and tussling. There was a lot of broken glass on the stairs and the floor, and Jemmott surmised that during the scuffle the broken glass cut Eric’s abdomen and was the cause of Eric’s injuries. Jemmott testified he did not have a knife during the struggle and did not cut Eric.
Jemmott stated that he could not have retreated during the struggle downstairs because there were fifteen stairs and it would not have been easy to break away ‘during the struggle and go up the stairs. According to Jemmott, when he first came across Eric and Pamela sitting on the wall, Eric stated that he would like to hit Jem-mott with the quart bottle that he had in his hand. Jemmott testified this created in his mind fear of great bodily harm. In addition, Jemmott testified that he knew Eric’s reputation in the community for being a violent person and was aware of numerous confrontations with which Eric had been involved.
Defense counsel requested that the court instruct the jury on the defenses of justifiable use of deadly force with respect to the principal charge of aggravated battery and justifiable use of nondeadly force with respect to the lesser included charge of battery. Written standard instructions were provided with this request. See Fla. Std. Jury Instr. (Crim.) 8.04(d)(e). The court instructed the jury on the crime of aggravated battery and the lesser crime of battery but refused to give the requested instructions on justifiable use of deadly and nondeadly force. It is from this ruling that Jemmott appeals.
Jemmott denied that a knife was involved in the altercation, and therefore, as in Abbott v. State, 589 So.2d 943 (Fla. 2d DCA 1991), we agree with the trial court that the self-defense instruction as to the justified use of deadly force for the aggravated battery charge was improper. In Abbott, the state’s case was that the defendant cut the victim with a knife during a barroom brawl. See Abbott, 589 So.2d at 944. Since the defendant took the stand and denied ever using a knife on the vie- *475 tim, this court held that a self-defense instruction was improper, because the defendant denied commission of the act. See Abbott, 589 So.2d at 944.
The same rationale applies to our case. Since Jemmott denied that he possessed a knife during the altercation and denied that an aggravated battery ever occurred, it was proper to deny the self-defense instruction as to aggravated battery.
Nonetheless, we agree with Jem-mott that the trial court erred by not providing the jury with the instruction of justified use of nondeadly force as to the lesser included charge of battery. Again, in Abbott, this court was presented with the identical issue. In Abbott, this court reversed on this point because the state failed to establish that the failure to give the self-defense instruction as to the lesser included charge of battery was harmless error. See Abbott, 589 So.2d at 944. The court stated that “[t]he record indicates that the testimony was conflicting and murky, which is not surprising since the circumstances involved a drunken barroom brawl in close, crowded quarters, and the sobriety of the participants and eyewitnesses was doubtful at best.” Abbott, 589 So.2d at 944.
However, because the facts in our case were not nebulous as was the case in Abbott, any error in failing to give the self-defense jury instruction as to the battery charge was harmless. The wounds received by Eric, in addition to the corroborated testimony as to how those wounds were incurred, justified the jury’s rejection of Jemmott’s version of the encounter. Because substantial, competent evidence supported the jury verdict of aggravated battery against Jemmott, we conclude that the refusal of the trial judge to give a self-defense instruction to the lesser crime of battery constituted harmless error beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
We affirm the aggravated battery judgment and sentence, as well as the probation revocation judgment and sentence.
THREADGILL, A.C.J., Concurs.
ALTENBERND, J., Concurs specially.