909 So.2d 414 (2005)
Pedro CARTEGENA, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-3286.
District Court of Appeal of Florida, Fifth District.
August 19, 2005.
James B. Gibson, Public Defender, and Kevin R. Holtz, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
The defendant in this case, Pedro Cartegena ["Cartegena"], was convicted of aggravated battery and aggravated assault. The sole issue on appeal is whether he was *415 entitled to an instruction on the justified use of nondeadly force.
At trial, the evidence showed that Cartegena got into a fight with a man named Irame Deshommes ["Deshommes"] as the two men were picking up their mail at a post office in Orlando. The two men gave very different accounts of the incident, and there were no other witnesses. Deshommes, the alleged victim, testified that he had gone to the post office to check on his mail and he was attacked by Cartegena as he came out the door. He claimed he had to fight his way back to his car and admitted to punching Cartegena in the forehead after Cartegena threatened him with a knife. According to Deshommes, Cartegena continued to pursue him and finally cut him on the arm with the knife. Deshommes said that he pursued Cartegena when he fled the scene and that he was able to corner him in an apartment complex not far from the post office. The police were called and Cartegena was arrested.
Cartegena admitted to verbally taunting Deshommes, who is Haitian. He said that he heard Deshommes "rapping and raving" about America as he retrieved his mail. Cartegena railed back, saying such things to Deshommes as, "You people use our democratic system to vote" and "when you come to America, you don't do nothing for our country; and you can't drive." According to Cartegena, Deshommes hit him on the side of the head with something, maybe a cell phone, as he walked out the door. Cartegena swung back, with his keys in his hand, which made him stumble and fall towards the glass door of the post office. Cartegena managed to get into his car and was able to drive away, although Deshommes tried to keep him from closing the car door. However, Cartegena's car was not working properly, so that Deshommes was able to follow him in his truck. Deshommes blocked him in when he reached a dead end street near the Citrus Bowl. Cartegena got out and tried to run away, but they saw the police and Deshommes went back to talk to them.
No knife was found on Cartegena or on the grounds of the parking lot or post office. During his testimony, Cartegena specifically denied ever having a knife or threatening Deshommes. He variously suggested that he might have cut Deshommes when he swung at him with his keys, or that Deshommes had cut himself when he fell against the post office door or as he tried to reach into Cartegena's car, which had jagged metal edges around the door frame.
Despite testimony by Cartegena that he was first attacked by Deshommes, and that Cartegena did nothing more than strike him back with his keys, after which he attempted to get away, the court refused Cartegena's request for an instruction on the justifiable use of nondeadly force, which would have instructed the jury that one of the issues in the case was whether Cartegena had acted in self-defense in attacking and/or injuring Deshommes. See Fla. Std. Jury Instr. (Crim.) 3.6(G). During the charge conference, the State opposed the instruction on a variety of grounds, including the ground that Cartegena had denied that he had used a knife. Defense counsel argued that instruction should be given because:
[Deshommes'] injuries could have come about when he fell back when he was, you know, grabbing at Mr. Cartegena, requiring Mr. Cartegena push him off.
However, the court refused the instruction, stating:
the defense does not fit the facts that we have in this case with regard to the knife because he'she's not saying he used the knife in self-defense. He's saying, "I didn't use a knife. We didn'tI didn't cut him. I don't know where that came from."
*416 Because of the court's ruling, the jury was not instructed on any defense for Cartegena, including self-defense.
On appeal, Cartegena correctly contends that he is entitled to reversal of his conviction because of the trial court's failure to instruct the jury on the justifiable use of non-deadly force. "Where there is any evidence introduced at trial which supports the theory of the defense, a defendant is entitled to have the jury instructed on the law applicable to his theory of defense when he so requests." Bryant v. State, 412 So.2d 347, 350 (Fla.1982). Here, because of evidence that Cartegena was first attacked by Deshommes and that Cartegena responded only with the use of nondeadly force, Cartegena was plainly entitled to the instruction. Mathews v. State, 799 So.2d 265 (Fla. 1st DCA 2001) (when the evidence does not establish that the force used in committing an aggravated battery was deadly or non-deadly as a matter of law, the jury should be allowed to decide the question); Stewart v. State, 672 So.2d 865, 868 (Fla. 2d DCA 1996)(defendant was entitled to instruction on justifiable use of nondeadly force in aggravated assault prosecution, where the parties told conflicting stories regarding who was aggressor). This is not a case in which Cartegena was requesting an instruction on the justifiable use of deadly force, while at the same time denying that he used a knife, which would have been improper. Jemmott v. State, 779 So.2d 472 (Fla. 2d DCA 2000)(where defendant denied use of deadly weapon, he was not entitled to instruction on justified use of deadly force).
REVERSED and REMANDED.
PLEUS, C.J., and ORFINGER, J., concur.